# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| YORK COUNTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| PURDUE PHARMA L.P.; PURDUE | ) | |
| PHARMA INC.; THE PURDUE | ) | CIVIL ACTION NO. _____ |
| FREDERICK COMPANY; TEVA | ) | (Removal from: Superior Court in York |
| PHARMACEUTICALS USA, INC.; | ) | County, State of Maine) |
| CEPHALON, INC.;  JOHNSON & | ) | |
| JOHNSON; JANSSEN | ) | |
| PHARMACEUTICALS, INC.; | ) | |
| ORTHO-MCNEIL-JANSSEN | ) | |
| PHARMACEUTICALS, INC. N/K/A | ) | |
| JANSSEN PHARMACEUTICALS, INC.; | ) | |
| JANSSEN PHARMACEUTICA, INC. | ) | |
| N/K/A JANSSEN PHARMACEUTICALS, | ) | |
| INC.; ENDO PHARMACEUTICALS INC.; | ) | |
| ALLERGAN PLC F/K/A ACTAVIS PLC; | ) | |
| ALLERGAN FINANCE, LLC, F/K/A | ) | |
| ACTAVIS, INC., F/K/A WATSON | ) | |
| PHARMACEUTICALS; WATSON | ) | |
| LABORATORIES, INC.; ACTAVIS LLC; | ) | |
| ACTAVIS PHARMA, INC. F/K/A | ) | |
| WATSON PHARMA, INC.; ENDO | ) | |
| HEALTH SOLUTIONS INC.; INSYS | ) | |
| THERAPEUTICS, INC.; | ) | |
| MALLINCKRODT ENTERPRISES LLC; | ) | |
| MCKESSON CORPORATION; | ) | |
| CARDINAL HEALTH 110 LLC; | ) | |
| AMERISOURCEBERGEN DRUG | ) | |
| CORPORATION; CVS PHARMACY, | ) | |
| INC.; WALGREENS BOOTS ALLIANCE, | ) | |
| INC. AKA WALGREEN CO.; WALMART | ) | |
| INC.; RITE AID CORPORATION; | ) | |
| RITE AID OF MARYLAND, INC.; | ) | |
| RITE AID OF MAINE, INC.; | ) | |
| DOUGLAS J. JORGENSEN, D.O.; | ) | |
| MARK E. CIENIAWSKI, M.D.; AND | ) | |
| MICHAEL B. BRUEHL, M.D., | ) | |
| | ) | |
| Defendants. | ) | |

1

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1441, 1446, and 1367, Defendant AmerisourceBergen Drug Corporation ("ABDC") has removed the above-captioned action from the Superior Court in York County, State of Maine to the United States District Court for the District of Maine. As grounds for removal, ABDC states:

## I.    NATURE OF REMOVED ACTION

1.    On November 21, 2018, York County, Maine ("Plaintiff") filed *York County v. Purdue Pharma L.P., et al.*, in the Superior Court in York County, State of Maine. The court assigned the case Docket No. CV-18-222.

2.    The Complaint asserts claims against four groups of Defendants.

3.    The first group of defendants consists of Purdue Pharma L.P.; Purdue Pharma Inc.; The Purdue Frederick Company; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Allergan PLC f/k/a Actavis PLC; Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.; Watson Laboratories, Inc.; Actavis LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; Insys Therapeutics, Inc.; and Mallinckrodt Enterprises LLC (collectively, "Manufacturer Defendants"). Compl. ¶¶ 61-84.

4.    The second group of defendants consists of McKesson Corporation; Cardinal Health 110 LLC; and AmerisourceBergen Drug Corporation (collectively, "Distributor Defendants"). *Id.* ¶¶ 85-104.

5.    The third group of defendants consists of CVS Pharmacy, Inc.; Walgreens Boots Alliance, Inc.; Walmart Inc.; Rite Aid Corporation; Rite Aid of Maryland, Inc.; and Rite Aid of Maine, Inc. (collectively, "Retail Pharmacy Defendants"). *Id.* ¶¶ 105-111.

6.　　The fourth and final group of defendants consists of Douglas J. Jorgensen, D.O.; Mark E. Cieniawski, M.D.; and Michael B. Bruehl, M.D. (collectively, "Individual Defendants"). *Id*. ¶¶ 112-125.

7.　　With respect to the Distributor Defendants, Plaintiff complains of over-distribution of prescription opioids into Maine and alleges that the Distributor Defendants "delivered an excessive and unreasonable amount of opioid pain medications to retailers in York."  *Id*. ¶ 757.

8.　　The Complaint asserts six counts against Distributor Defendants: violation of the Maine Unfair Trade Practices Act (Count I); public nuisance (Count II); fraud (Count III); unjust enrichment (Count IV); negligence (Count V); and negligent marketing (Count VI).  *Id*. ¶¶ 855-915, Prayer for Relief.

9.　　Although Plaintiff purports to disavow stating a federal question, *id*. ¶ 59, Plaintiff pleads, among other things, that Distributor Defendants were required to "report suspicious orders [of controlled substances] to the proper authorities and governing bodies," *id*. ¶ 739, that Distributor Defendants "did not refuse to . . . ship, or supply any opioid medications to any pharmacy in York," *id*. ¶ 758, and that "[m]any of these orders should have been stopped, or at the very least, investigated as potential suspicious orders," *id*. ¶ 755.

10.　　Because the duties governing reporting and shipping "suspicious" opioid orders arise from the federal Controlled Substances Act ("CSA") and its implementing regulations, Plaintiff pleads that alleged violations of federal law form the basis for its claims.

11.　　ABDC has not responded to the Complaint in state court.  ABDC accepted service on December 12, 2018, in return for an agreed-upon response deadline of March 4, 2019.

12.　　On December 5, 2017, the Judicial Panel on Multidistrict Litigation ("JPML") formed a multidistrict litigation ("MDL") and transferred opioid-related actions to Judge Dan

Polster in the Northern District of Ohio pursuant to 28 U.S.C. § 1407. *See In re Nat'l Prescription Opiate Litig.*, MDL No. 2804 (Dec. 5, 2017), ECF No. 328. More than 1,400 opioid-related actions are pending in the MDL, including dozens of actions originally filed within the First Circuit.[1]

---

[1] *See, e.g.*, *City of Fall River v. Purdue Pharma L.P.*, No. 1:18-cv-12363 (D. Mass.) (transferred to MDL Nov. 30, 2018); *City of Pittsfield v. AmerisourceBergen Drug Corp.*, No. 3:18-cv-30040 (D. Mass.) (transferred to MDL Apr. 4, 2018); *City of Easthampton, Mass. v. AmerisourceBergen Drug Corp., et al.*, No. 3:18-cv-30041 (D. Mass.) (transferred to MDL Apr. 4, 2018); *City of Northampton v. AmerisourceBergen Drug Corp., et al.*, No. 3:18-cv-30042 (D. Mass) (transferred to MDL Apr. 4, 2018); *City of Malden v. AmerisourceBergen Drug Corp., et al.*, No. 1:18-cv-10602 (D. Mass.) (transferred to MDL Apr. 16, 2018); *City of Warwick v. AmerisourceBergen Drug Corp., et al.*, No. 1:18-cv-00136 (D.R.I.) (transferred to MDL Apr. 16, 2018); *Town of North Providence v. AmerisourceBergen Drug Corp., et al.*, No. 1:18-cv-00137 (D.R.I.) (transferred to MDL Apr. 16, 2018); *Town of Johnston v. AmerisourceBergen Drug Corp., et al.*, No. 1:18-cv-00138 (D.R.I.) (transferred to MDL Apr. 16, 2018); *City of Pawtucket v. AmerisourceBergen Drug Corp., et al.*, No. 1:18-cv-00139 (D.R.I.) (transferred to MDL Apr. 16, 2018); *City of East Providence v. AmerisourceBergen Drug Corporation, et al.*, No. 1:18-cv-00140 (D.R.I.) (transferred to MDL Apr. 16, 2018); *Town of Cumberland, Rhode Island v. AmerisourceBergen Drug Corporation, et al.*, No. 1:18-cv-00141 (D.R.I.) (transferred to MDL Apr. 16, 2018); *City of Central Falls, Rhode Island v. AmerisourceBergen Drug Corporation, et al.*, No. 1:18-cv-00142 (D.R.I.) (transferred to MDL Apr. 16, 2018); *Town of Charlestown Rhode Island v. AmerisourceBergen Drug Corporation, et al.*, No. 1:18-cv-00143 (D.R.I.) (transferred to MDL Apr. 16, 2018); *Town of Barrington v. AmerisourceBergen Drug Corporation, et al.*, No. 1:18-cv-00144 (D.R.I.) (transferred to MDL Apr. 16, 2018); *City of Bristol v. AmerisourceBergen Drug Corporation, et al.*, No. 1:18-cv-00145 (D.R.I.) (transferred to MDL Apr. 16, 2018); *Town of Burrillville v. AmerisourceBergen Drug Corporation, et al.*, No. 1:18-cv-00146 (D.R.I.) (transferred to MDL Apr. 16, 2018); *Town of Coventry Rhode Island v. AmerisourceBergen Drug Corporation, et al.*, No. 1:18-cv-00147 (D.R.I.) (transferred to MDL Apr. 16, 2018); *City of Cranston, Rhode Island v. AmerisourceBergen Drug Corporation, et al.*, No. 1:18-cv-00149 (D.R.I.) (transferred to MDL Apr. 16, 2018); *Town of Foster v. AmerisourceBergen Drug Corporation, et al.*, No. 1:18-cv-00150 (D.R.I.) (transferred to MDL Apr. 16, 2018); *Town of Glocester v. AmerisourceBergen Drug Corporation, et al.*, No. 1:18-cv-00152 (D.R.I.) (transferred to MDL Apr. 16, 2018); *Town of Hopkinton Rhode Island v. AmerisourceBergen Drug Corporation, et al.*, No. 1:18-cv-00153 (D.R.I.) (transferred to MDL Apr. 16, 2018); *Town of Jamestown v. AmerisourceBergen Drug Corporation, et al.*, No. 1:18-cv-00154 (D.R.I.) (transferred to MDL Apr. 16, 2018); *Town of Narragansett v. AmerisourceBergen Drug Corporation, et al.*, No. 1:18-cv-00155 (D.R.I.) (transferred to MDL Apr. 16, 2018); *City of Newport, Rhode Island v. AmerisourceBergen Drug Corporation, et al.*, No. 1:18-cv-00156 (D.R.I.) (transferred to MDL Apr. 16, 2018); *Town of North Kingstown v. AmerisourceBergen Drug Corporation, et al.*, No. 1:18-cv-00157 (D.R.I.) (transferred to MDL Apr. 16, 2018); *Town of Richmond v. AmerisourceBergen Drug Corporation, et al.*, No. 1:18-cv-00158 (D.R.I.) (transferred to MDL Apr. 16, 2018); *Town of Smithfield v. AmerisourceBergen Drug Corporation, et al.*, No. 1:18-cv-00159 (D.R.I.) (transferred to MDL Apr. 16, 2018); *Town of South Kingstown*

13.     Three cases originally filed in Maine state court have already been removed to federal court and transferred to MDL 2804, after Magistrate Judge Nivison stayed proceedings pending transfer to the MDL.[2]

14.     ABDC intends to tag this case immediately for transfer to the MDL.

15.     In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served on ABDC in the state court action will be filed with the Court.  *See* Declaration of Joshua D. Dunlap, ¶ 4 (dated January 10, 2019) (hereinafter "Dunlap Decl.").

## II.     <u>TIMELINESS OF REMOVAL</u>

16.     ABDC accepted service of the Complaint on December 12, 2018.  ABDC was not previously served with the Complaint.

17.     In accordance with 28 U.S.C. § 1446(b), this notice of removal is timely filed within 30 days of service of Plaintiff's Complaint.  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (30-day removal period begins to run upon service of summons and complaint).

18.     "If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that

---

*Municipal Corporation v. AmerisourceBergen Drug Corporation, et al.*, No. 1:18-cv-00160 (D.R.I.) (transferred to MDL Apr. 16, 2018); *Town of West Greenwich v. AmerisourceBergen Drug Corporation, et al.*, No. 1:18-cv-00161 (D.R.I.) (transferred to MDL Apr. 16, 2018); *Town of West Warwick v. AmerisourceBergen Drug Corporation, et al.*, No. 1:18-cv-00162 (D.R.I.) (transferred to MDL Apr. 16, 2018); *Town of Westerly v. AmerisourceBergen Drug Corporation, et al.*, No. 1:18-cv-00163 (D.R.I.) (transferred to MDL Apr. 16, 2018); *City of Keene v. Purdue Pharma L.P., et al.*, No. 4:18-cv-00293 (D.N.H.) (transferred to MDL Apr. 27, 2018).

[2] *City of Portland v. Purdue Pharma L.P., et al.*, 2:18-cv-00282 (D. Me.) (transferred to MDL Dec. 10, 2018); *City of Bangor v. Purdue Pharma L.P.. et al.*, No. 1:18-cv-00298 (D. Me.) (transferred to MDL Dec. 10, 2018); *City of Lewiston v. Purdue Pharma L.P., et al.*, No. 2:18-cv-00310 (D. Me.) (transferred to MDL Dec. 10, 2018).

earlier-served defendant did not previously initiate or consent to removal."  28 U.S.C. § 1446(b)(2)(C).

## III.   PROPRIETY OF VENUE

19.   Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because the Superior Court in York County, State of Maine, where the state court action was pending prior to removal, is a state court within this federal district and division.

## IV.   BASIS OF REMOVAL

20.   Removal is proper pursuant to 28 U.S.C. §§ 1331 and 1441 because Plaintiff's claims present a substantial federal question under the CSA, 21 U.S.C. §§ 801, *et seq.*[3]

21.   The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

---

[3] A defendant need not overcome any artificial presumptions against removal or in favor of remand.  In *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), the Supreme Court unanimously held that the 1948 amendments to the general federal removal statute, 28 U.S.C. § 1441(a), trumped the Court's prior teachings in *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941), and its antecedents, that federal jurisdictional statutes must be strictly construed against any recognition of federal subject matter jurisdiction, with every presumption indulged in favor of remand.  *Id.* at 697-98 ("[W]hatever apparent force this argument [of strict construction against removal] might have claimed when *Shamrock* was handed down has been qualified by later statutory development. . . .  Since 1948, therefore, there has been no question that whenever the subject matter of an action qualifies it for removal, *the burden is on a plaintiff to find an express exception*." (emphasis added)); *see also Exxon Mobil Corp. v Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) (construing 1990 enactment of 28 U.S.C. § 1367, authorizing supplemental federal subject matter jurisdiction, and holding: "We must not give jurisdictional statutes a more expansive interpretation than their text warrants; but it is just as important not to adopt an artificial construction that is narrower than what the text provides . . . Ordinary principles of statutory construction apply." (citation omitted)).

More recently, a unanimous Supreme Court in *Mims v. Arrow Financial Services, LLC* held: "Divestment of district court jurisdiction should be found no more readily than divestment of state court jurisdiction, given the longstanding and explicit grant of federal question jurisdiction in 28 U.S.C. § 1331."  565 U.S. 368, 379 (2012) (brackets and citations omitted).

22.     "Whether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830, 839 (2002).  The artful pleading doctrine, however, "empowers courts to look beneath the face of the complaint to divine the underlying nature of a claim, to determine whether the plaintiff has sought to defeat removal by asserting a federal claim under state-law colors." *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am.*, 132 F.3d 824, 831 (1st Cir. 1997); *see also Lopez-Munoz v. Triple-S Salud, Inc.*, 754 F.3d 1, 5 (1st Cir. 2014) ("[T]he artful pleading doctrine allows a federal court to peer beneath the local-law veneer of a plaintiff's complaint in order to glean the true nature of the claims presented.").  "In other words, a plaintiff may not, by the expedient of artful pleading, defeat a defendant's legitimate right to a federal forum." *BIW Deceived*, 132 F.3d at 831.

23.     Even when state law creates the causes of action, a complaint may raise a substantial question of federal law sufficient to warrant removal if "vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808-09 (1986) (citation omitted); *see Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936) ("To bring a case within [§ 1441], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").

24.     "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005).  "Where all four of these requirements are met . . . jurisdiction is proper because there

is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258; *see also One & Ken Valley Hous. Grp. v. Maine State Hous. Auth.*, 716 F.3d 218, 224 (1st Cir. 2013) (federal jurisdiction is proper "where a state-law claim necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities" (citation and alteration omitted)); *Rhode Island Fishermen's All., Inc. v. Rhode Island Dep't of Envtl. Mgmt.*, 585 F.3d 42, 48 (1st Cir. 2009) ("To satisfy the rule, the plaintiff's well-pleaded complaint must exhibit, within its four corners, either an explicit federal cause of action or a state-law cause of action that contains an embedded question of federal law that is both substantial and disputed.").

25.     As set forth below, this case meets all four requirements.[4]

26.     Although Plaintiff ostensibly pleads some of its theories of recovery against Distributor Defendants as state law claims, it bases the underlying theory of liability on ABDC's alleged violations of federal law or alleged duties arising out of federal law, specifically the CSA, i.e., that a portion of its otherwise lawful shipments of prescription opioids were unlawful because they were shipped in fulfillment of suspicious orders that ABDC allegedly had a duty to identify, report, and then not ship.

27.     The source of the asserted legal duty to monitor and report suspicious orders of controlled substances is the CSA, 21 U.S.C. §§ 801, *et seq.*, and its implementing regulations. *See*

---

[4] The substantiality inquiry as it pertains to federal question jurisdiction is distinct from the merits of the case and has no bearing on the strength of Plaintiff's underlying claims. *See Gunn v. Minton*, 568 U.S. 251, 260 (2013) ("The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole.").

21 C.F.R. § 1301.75(b) (duty to monitor and report suspicious orders of controlled substances). The Complaint makes this clear on its face. *See* Compl. ¶ 10 n.4 (stating that "[o]pioids are regulated as controlled substances" and referencing the CSA's schedule of drugs); *id.* ¶ 132 ("opioids have been regulated at the federal level as controlled substances by the U.S. Drug Enforcement Administration ("DEA") since 1970," when Congress enacted the CSA); *id.* ¶ 765 (discussing "the responsibilities of controlled substance manufacturers and distributors to inform DEA of suspicious orders in accordance with 21 C.F.R. § 1301.74(b)" (quotation marks omitted)); *id.* ¶ 766 (discussing briefings provided to the Defendant Distributors by the DEA); *id.* ¶ 768 (discussing "statutory and regulatory duties" to report suspicious orders to the DEA).

28.     The source of the asserted legal duty to suspend shipments of suspicious orders is 21 U.S.C. § 823(b) and (e), as interpreted by the Drug Enforcement Administration ("DEA") of the United States Department of Justice.  Specifically, DEA interprets the public interest factors for registering distributors under the CSA, 21 U.S.C. § 823(b) and (e), to impose a responsibility on distributors to exercise due diligence to avoid filling suspicious orders that might be diverted to unlawful uses.  *See Masters Pharm., Inc. v. Drug  Enf't Admin.*, 861 F.3d 206, 212-13 (D.C. Cir. 2017) (citing *In re Southwood Pharm., Inc.,* Revocation of Registration, 72 Fed. Reg. 36,487, 36,501, 2007 WL 1886484 (Drug Enf't Admin. July 3, 2007), as source of DEA's "Shipping Requirement").  Again, Plaintiff's Complaint makes this clear on its face.  *See* Compl. ¶ 768 (citing 21 U.S.C. § 823).

29.     Plaintiff's theories of liability against ABDC and other Distributor Defendants, as pled in the Complaint, are predicated on allegations that ABDC and Distributor Defendants breached alleged duties under the CSA to implement effective controls to detect and report

"suspicious" pharmacy orders for prescription opioids and—crucial to Plaintiff's claims—to refuse to ship such orders to Maine pharmacies.

30.     Specifically, Plaintiff pleads that ABDC and the other Distributor Defendants violated federal law with, among others, the following allegations:

a.      "The Defendants had a duty to notice suspicious or alarming orders of opioid pharmaceuticals and to report suspicious orders to the proper authorities and governing bodies including the Maine Board of Pharmacy and the Maine Department of Health and Human Services."  Compl. ¶ 739.

b.      "The Defendants have displayed a continuing pattern of failing to submit suspicious order reports."  *Id*. ¶ 744.

c.      "Despite the charges, fines, and penalties brought against the Distributor Defendants in the past [by the DEA], they continued to fail to report suspicious orders or prevent the flow of prescription opioids, including into York."  *Id*. ¶ 752.

d.      "Many of these orders should have been stopped, or at the very least, investigated as potential suspicious orders."  *Id*. ¶ 755.

e.      "[A] distributor, in addition to reporting suspicious orders, has a 'statutory responsibility to exercise due diligence to avoid filling suspicious orders that might be diverted into other than legitimate medical, scientific, and industrial channels.'"  *Id*. ¶ 767 (quoting 2006 letter from DEA).

31.     Plaintiff does not identify Maine authority to serve as the basis of its claims against the Distributor Defendants, though it purports to do so.  *See* Compl. ¶¶ 733, 739, 895.  The only authority it cites, Chapter 16 of the Maine Board of Pharmacy Rules, does not require wholesale

pharmaceutical distributors to identify and report suspicious orders of controlled substances to a Maine government official or entity, nor does it require wholesale pharmaceutical distributors to "stop," "prevent," or "avoid filling" suspicious orders of controlled substances from registered pharmacies. Instead, as Plaintiff itself alleges, that chapter simply establishes certain storage and record-keeping requirements. 02-392 C.M.R. Chap. 16. Thus, the only conceivable basis for the duties on which Plaintiff's claims rest (i.e., the duties to report and halt suspicious orders for prescription opioids) is the CSA and DEA regulations. Plaintiff therefore has pleaded federal questions merely dressed up as state law claims.

32.     Under the artful pleading doctrine, Plaintiff may not escape federal jurisdiction merely by omitting citations to the federal statutes and regulations that serve as the exclusive basis for Plaintiff's claims. *See Narragansett Indian Tribe Of Rhode Island v. Rhode Island*, 407 F.3d 450, 455 n.2 (1st Cir. 2005) ("The 'artful pleading rule' bars a plaintiff from concealing a necessary federal question by omitting it from the complaint."); *cf. Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 5 (1st Cir. 2012) ("The interrelationship of the state claims and a [collective bargaining agreement governed by federal law] cannot be avoided merely by refusing to identify the [agreement] in the complaint and citing the well pleaded complaint rule.").

33.     The federal question presented by Plaintiff's claims therefore is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

34.     **First**, Plaintiff's state law claims "necessarily raise" a federal question because "their asserted right to relief under state law requires resolution of a federal question." *Rhode Island Fishermen's All.*, 585 F.3d at 49; *see also PNC Bank, N.A. v. PPL Elec. Util. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (federal question necessarily raised where "the right to relief

depends upon the construction or application of federal law." (citation omitted)); *see also N. Carolina by & through N. Carolina Dep't of Admin. v. Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017) ("Regardless of the allegations of a state law claim, 'where the vindication of a right under state law necessarily turns on some construction of federal law,' the claim arises under federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331." (alteration omitted)); *Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law or *if the action requires construction of a federal statute*, or at least a distinctive policy of a federal statute requires the application of federal legal principles" (emphasis added)).

35.     As pled, Plaintiff's claims against ABDC and the other Distributor Defendants require Plaintiff to establish that Distributor Defendants breached duties arising solely under federal law, by failing to stop shipments of otherwise lawful orders of controlled substances into Maine.

36.     For example, in pleading negligence, Plaintiff alleges that Distributor Defendants "have a duty to exercise reasonable care in the distribution of opioids," that Distributor Defendants "breached this duty by failing to take any action to prevent or reduce the distribution of opioids." Compl. ¶¶ 891, 892 (Count V).  As noted, however, the alleged duty to prevent or halt shipments of suspicious orders arises solely under the federal CSA, and not under state law.  "Thus, it is not logically possible for [Plaintiff] to prevail on this cause of action without affirmatively answering the embedded question of whether federal law" required Distributor Defendants to report and halt shipments of suspicious orders for prescription opioids under the circumstances.  *Rhode Island Fishermen's All.*, 585 F.3d at 49.  "That is enough to make out a federal question." *Id.*

37.     While plaintiffs are masters of their complaints, and they "may avoid federal jurisdiction by *exclusive* reliance on state law," *Caterpillar, Inc. v. Williams*, 482 U.S. 386, at 392 (1987) (emphasis added), Plaintiff here alleges violations of federal duties as the basis for its state-law claims.[5]  Although Plaintiff refers in passing to "Maine statutes" that it claims gives rise to the same duties, *see* Compl. ¶ 895, it nowhere identifies any specific provision of state law that creates a duty for wholesale distributors of controlled substances to report or refuse to fill suspicious orders for prescription opioids.  Tellingly, Plaintiff cites extensively to DEA letters and briefings that establish a duty to report suspicious orders and prevent opioid diversion, *id.* ¶¶ 766-768, but fails to cite any analogous state law provisions establishing that duty.

38.     In sum, the Complaint necessarily raises a federal issue—namely, whether Distributor Defendants violated the CSA—as well as questions regarding the scope of duties arising under the CSA.

39.     **Second**, this federal issue is "actually disputed" because the parties disagree as to the existence and scope of alleged duties arising under the CSA and whether Distributor

---

[5] Furthermore, it is not necessary for federal jurisdiction that ABDC establish that all of Plaintiff's counts against it raise a federal question.  Even if Plaintiff could prove one or more of those counts without establishing a violation of federal law, this Court still has federal-question jurisdiction: "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'"  *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 166 (1997).

Because the Court has original jurisdiction over at least one count here, it has supplemental jurisdiction over Plaintiff's remaining counts against ABDC and the other Distributor Defendants, which are so related that they "form part of the same case or controversy."  28 U.S.C. § 1367(a); *see also Rhode Island Fishermen's All.* 585 F.3d at 48 ("[I]f the district court had original jurisdiction over any one of these causes of action, then it had supplemental jurisdiction over the rest.").

Defendants violated their duties that, as Plaintiff pleads them, arise only under the CSA.  Indeed, this federal issue is the "central point of dispute."  *Gunn*, 568 U.S. at 259.

40.     **Third**, the federal issue presented by Plaintiff's claims is "substantial."  "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole."  *Gunn*, 568 U.S. at 260.  Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine the development of a uniform body of [federal] law." *Id*. at 260-62 (citation omitted); *Municipality of Mayaguez v. Corporacion Para el Desarrollo del Oeste, Inc.*, 726 F.3d 8, 14 (1st Cir. 2013) ("[A] federal issue may also be substantial where the resolution of the issue has 'broader significance ... for the Federal Government.'" (quoting *Gunn*, 568 U.S. at 260)).  As the Supreme Court explained in *Grable*, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  545 U.S. at 312.

41.     Plaintiff's theories of Distributor Defendants' liability necessarily require that a court determine the existence and scope of Distributor Defendants' obligations under federal law because regulation of controlled substances is first and foremost federal regulation.  Compl. ¶¶ 9 n.4, 132 (discussing federal regulation of controlled substances).  Indeed, Congress designed the CSA with the intent of reducing illegal diversion of controlled substances, "while at the same time providing the legitimate drug industry with a *unified approach* to narcotic and dangerous drug control."  H.R. Rep. No. 1444, 91st Cong. (2nd Sess. 1970), *as reprinted in* 1970 U.S.C.C.A.N. 4566, 4571-72.

42.     Plaintiff's theories of Distributor Defendants' liability thus "involve aspects of the complex federal regulatory scheme applicable to" the national prescription drug supply chain, *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005), and are "sufficiently significant to the development of a uniform body of [controlled substances] regulation to satisfy the requirement of importance to the federal system as a whole," *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1024 (2d Cir. 2014).  The CSA itself notes that "illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people" and that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic."  21 U.S.C. § 801.  Furthermore, "minimizing uncertainty over" reporting obligations under the CSA "fully justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 317-18 (2d Cir. 2016); *see also PNC Bank, N.A.*, 189 F. App'x at 104 n.3 (state law claim "raises a substantial federal question-the interpretation of" federal statute "over which the District Court properly exercised removal jurisdiction"); *Rhode Island Fishermen's All.*, 585 F.3d at 51 ("[T]here is a substantial federal interest in ensuring that actions taken in pursuance of [federal regulatory programs] receive the uniformity of interpretation that a federal forum offers.").  Thus, "[g]iven that . . . the plaintiffs' claims turn on the interpretation of the federal regulations governing" the distribution of controlled substances "and the importance of those regulations to the Congressional scheme, this case plainly falls within the narrow swath of cases described in *Grable*."  *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 174 n.5 (1st Cir. 2016).

43.     Plaintiff's attempt to enforce the CSA raises a substantial federal question even though the CSA does not provide for a private right of action.  In 2005, in *Grable*, the Supreme Court held that lack of a federal cause of action does *not* foreclose federal-question jurisdiction. The Court stated that applying *Merrell Dow* too narrowly would both "overturn[ ] decades of precedent," and "convert[ ] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one."  *Grable*, 545 U.S. at 317; *see also, e.g., Ranck v. Mt. Hood Cable Reg. Comm'n*, No. 3:16-cv-02409-AA, 2017 WL 1752954, at *4-*5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act raise substantial federal questions and satisfy *Grable* even though no private right of action exists under Act).

44.     Removal is particularly appropriate here because Plaintiff's action is but one of more than a thousand similar actions nationwide pending in the MDL in the Northern District of Ohio.  Indeed, Plaintiff alleges that the Distributor Defendants engaged in the same wrongful conduct "in York as they did *nationwide*."  Compl. ¶ 195.  The MDL judge, Judge Polster, is attempting to achieve a national solution to this nationwide problem.[6]

45.     **Fourth**, and finally, the federal issue also is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress."  *Gunn*, 568 U.S. at 258. Federal courts exclusively hear challenges to DEA authority to enforce the CSA against distributors, and litigating this case in a state court runs the risk of the state court applying federal requirements inconsistently with the manner in which the federal agency tasked with enforcing the CSA—the DEA—applies them.  Federal jurisdiction is therefore "consistent with congressional

---

[6] Less than two months after the MDL was created, Judge Polster convened the first day-long settlement conference on January 31, 2018.  Judge Polster required attendance by party representatives and their insurers and invited attendance by Attorneys General and representatives of the DEA and FDA.

judgment about the sound division of labor between state and federal courts governing the application of § 1331." *PNC Bank, N.A.*, 189 F. App'x at 104 n.3.

46.    In summary, removal of this action is appropriate because Plaintiff's "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Grable*, 545 U.S. at 314; *see also, e.g., PNC Bank, N.A.*, 189 F. App'x at 104 n.3 (state law claim based on violation of Internal Revenue Code "gives rise to federal-question jurisdiction" under *Grable*); *New York ex rel. Jacobson*, 824 F.3d at 315–18 (state law claims based on defendant's alleged violation of Internal Revenue Code satisfy *Grable*); *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1031 (state law claims premised on violations of Exchange Act "necessarily raise disputed issues of federal law of significant interest to the federal system as a whole"); *Gilmore v. Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012) ("Although plaintiffs could lose their conversion claim without the court reaching the federal question, it seems that they cannot win unless the court answers that question.  Thus, plaintiffs' 'right to relief necessarily depends on resolution of a substantial question of federal law.'") (citation omitted); *Broder*, 418 F.3d at 196 (state law claims premised on cable provider's alleged violations of Communication Act's uniform rate requirement satisfy "*Grable* test for federal-question removal jurisdiction"); *Ranck*, No. 3:16-cv-02409-AA, 2017 WL 1752954, at *5 (state law claims based on violations of Cable Communications Policy Act satisfy *Grable*).

47.    To the extent that the Court determines that some, but not all, of Plaintiff's claims state a substantial federal question, the Court can evaluate whether to retain the non-federal claims against the Manufacturer Defendants, Distributor Defendants, Retail Pharmacy Defendants, and Individual Defendants under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367(a).

## V.     **OTHER REMOVAL ISSUES**

48.     Under 28 U.S.C. § 1446(b)(2)(A), all defendants that have been properly joined and served must join or consent to removal.

49.     The following Defendants have been served in this action and consent to removal, as indicated by their counsel's signatures below:  Purdue Pharma L.P.; Purdue Pharma Inc.; The Purdue Frederick Company; Cephalon, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.; Actavis LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; Insys Therapeutics, Inc.; Mallinckrodt Enterprises LLC*;* McKesson Corporation; Cardinal Health 110 LLC; CVS Pharmacy, Inc.; Walgreens Boots Alliance, Inc.; Walmart Inc.; Rite Aid Corporation; Rite Aid of Maryland, Inc.; Rite Aid of Maine, Inc.*;* Douglas J. Jorgensen, D.O.; Mark E. Cieniawski, M.D.; and Michael B. Bruehl, M.D.

50.     The following Defendants have not been properly served, and thus their consent to removal is not required: Teva Pharmaceuticals USA, Inc.; Allergan PLC f/k/a Actavis PLC[7]; Watson Laboratories, Inc.  Nevertheless, they consent to removal as indicated by their counsel's signatures below.

51.     By filing this Notice of Removal, ABDC and the consenting Defendants expressly reserve, and do not waive, any and all defenses that may be available to them, including those

---

[7] Allergan plc, an Irish corporation, disputes that it has been served, but nevertheless consents to removal and expressly reserves all rights and defenses including those related to personal jurisdiction and service of process.

related to personal jurisdiction and service of process.[8]  If any question arises as to propriety of removal to this Court, ABDC requests the opportunity to present a brief and oral argument in support of its position that this case has been properly removed.

52.     Pursuant to 28 U.S.C. § 1446(d), ABDC will promptly file a copy of this Notice of Removal with the clerk of the state court where the lawsuit has been pending and serve notice of the filing of this Notice of Removal on Plaintiff.

53.     ABDC reserves the right to amend or supplement this Notice.

**WHEREFORE**, ABDC removes this action, pending in the Superior Court in York County, State of Maine, Docket No. CV-18-222, to this Court.

DATED: January 10, 2019                    /s/ Joshua D. Dunlap_____
                                           Joshua D. Dunlap
                                           Kyle M. Noonan
                                           Pierce Atwood LLP
                                           Merrill's Wharf
                                           254 Commercial Street
                                           Portland, ME 04101
                                           (207) 791-1100
                                           jdunlap@pierceatwood.com
                                           knoonan@pierceatwood.com

                                           *Counsel for AmerisourceBergen Drug Corporation*

---

[8] Douglas Jorgensen, D.O., Mark Cieniawski, M.D., and Michael Bruehl, M.D., expressly reserve, and do not waive, any and all defenses that may be available to them, including misjoinder, the Maine Health Security Act, 24 M.R.S. § 2851, and Maine's anti-SLAPP statute, 14 M.R.S. § 556.

**CONSENTS TO REMOVAL**

*/s/ Mark Cheffo*
Mark Cheffo*
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500
Mark.Cheffo@dechert.com

*\* denotes national counsel who will seek pro hac vice admission*

*Counsel for Purdue Pharma L.P.; Purdue Pharma Inc.; and The Purdue Frederick Company, Inc.*

*/s/ Jeff Goldman*      
Jeff Goldman, Bar No. (004006)
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110-1776
Telephone: 617.341.7700
jeff.goldman@morganlewis.com

Steven A. Reed*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone:  215.963.5000
steven.reed@morganlewis.com

Stacey Anne Mahoney*
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
Telephone: 212.309.6000
stacey.mahoney@morganlewis.com

*\* denotes national counsel who will seek pro
hac vice admission*

*Counsel for Teva Pharmaceuticals USA, Inc.;
Cephalon, Inc.; Watson Laboratories, Inc.;
Actavis LLC; and Actavis Pharma, Inc. f/k/a
Watson Pharma, Inc.*

/s/ Charles C. Lifland
Charles C. Lifland*
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
Telephone:  (213) 430-6000
clifland@omm.com

*denotes national counsel who will seek pro hac vice admission*

*Counsel for Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; and Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.*


/s/ Karen Frink Wolf
Karen Frink Wolf
VERRILL DANA, LLP
One Portland Square
P.O. Box 586
Portland, Maine  04112-0586
Tel: (207) 253-4484
Fax: (207) 253-4485
kwolf@verrilldana.com

*Counsel for Endo Pharmaceuticals Inc. and Endo Health Solutions Inc.*

*/s/ Donna Welch, P.C.*
Donna Welch, P.C.*
Martin L. Roth*
Timothy W. Knapp*
KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
donna.welch@kirkland.com
rothm@kirkland.com
tknapp@kirkland.com

Jennifer G. Levy, P.C.*
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200
jennifer.levy@kirkland.com
*\* denotes national counsel who will seek
pro hac vice admission*

*Counsel for Allergan Finance, LLC f/k/a
Actavis, Inc. f/k/a Watson Pharmaceuticals,
Inc.*

*/s/ Katherine S. Perry*
Katharine S. Perry, No. 009944
ADLER POLLOCK & SHEEHAN P.C.
175 Federal Street, 10th Floor
Boston, MA 02110
Tel:  (617) 482-0600
Fax: (617) 482-0604
Email: kperry@apslaw.com

J. Matthew Donohue* (Trial Attorney)
Joseph L. Franco*
HOLLAND & KNIGHT LLP
2300 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300
Facsimile: 503.241.8014
matt.donohue@hklaw.com
joe.franco@hklaw.com

*\* denotes national counsel who will seek pro
hac vice admission*

*Counsel for Insys Therapeutics, Inc.*

/s/ Timothy C. Woodcock
Timothy C. Woodcock
Maine Bar No. 1663
Eaton Peabody
80 Exchange Street
Bangor, Maine 04401
Telephone: (207) 992-4338
twoodcock@eatonpeabody.com

Brien T. O'Connor*
Andrew J. O'Connor*
ROPES & GRAY LLP
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
Telephone: (617) 235-4650
Brien.O'Connor@ropesgray.com
Andrew.O'Connor@ropesgray.com

*denotes national counsel who will seek pro hac vice admission*

*Counsel for Mallinckrodt Enterprises LLC*

/s/ Melissa M. Hanlon
Melissa M. Hanlon, Esq. (Maine Bar No. 09449)
SULLOWAY & HOLLIS, P.L.L.C.
9 Capitol Street
Concord, NH  03301
(603) 224-2341
mhanlon@sulloway.com

*Counsel for McKesson Corporation*

_/s/ Christopher D. Hawkins_

Christopher D. Hawkins
Maine Bar No. 004096
DEVINE MILLIMET & BRANCH PA
111 Amherst St
Manchester, NH 03101
603 669-1000
chawkins@devinemillimet.com

_Counsel for Cardinal Health 110 LLC_

_/s/ Geraldine G. Sanchez_

Geraldine G. Sanchez
Clifford H. Ruprecht
ROACH HEWITT RUPRECHT
SANCHEZ & BISCHOFF, P.C.
66 Pearl Street, Suite 200
Portland, Maine 04101
Telephone: (207) 747-4870
gsanchez@roachhewitt.com
cruprecht@roachhewitt.com

_/s/ Conor B. O'Croinin_

Conor B. O'Croinin*
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
Telephone: (410) 949-1160
cocroinin@zuckerman.com

_* denotes national counsel who will seek pro hac vice admission_

_Attorneys for Defendant CVS Pharmacy, Inc._

*/s/ Joseph L. Cahoon*
Joseph L. Cahoon Jr.
Richardson, Whitman, Large & Badger
465 Congress Str., 9th Floor
Portland, ME 04101
(207) 774-7474
jlc@rwlb.com

*Counsel for Walgreens Boots Alliance, Inc.*


*/s/ Daniel R. Mawhinney*
Daniel R. Mawhinney
Marden Dubord Bernier & Stevens PA LLC
44 Elm Street
Waterville, ME 04901
Telephone: (207) 873-0186
Facsimile: (207) 873-2245
Email: dmawhinney@mardendubord.com

Christopher Lovrien*
Claire E. Castles*
Sarah G. Conway*
JONES DAY
555 South Flower St., Fiftieth Floor
Los Angeles, CA 90071-2452
Telephone: (213) 243-3567
Facsimile: (213) 243-2539
Email: cjlovrien@jonesday.com
Email: ccastles@jonesday.com
Email: sgconway@jonesday.com

*\* denotes national counsel who will seek pro hac vice admission*

*Counsel for Walmart Inc.*

*/s/ Gerald F. Petruccelli*
Gerald F. Petruccelli
Petruccelli, Martin & Haddow, LLP
Two Monument Square
Suite 900
PO Box 17555
Portland, ME 04112-8555
207.775.0200
gpetruccelli@pmhlegal.com

Kelly A. Moore*
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
212.309.6612
kelly.moore@morganlewis.com

Elisa P. McEnroe*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
215.963.5917
elisa.mcenroe@morganlewis.com

*\* denotes national counsel who will seek pro hac vice admission*

*Attorneys for Rite Aid Corporation; Rite Aid of Maryland, Inc.; and Rite Aid of Maine, Inc.*

*/s/ Maureen Sturtevant*
Maureen Sturtevant
LAMBERT COFFIN
One Canal Plaza, Suite 400
P.O. Box 15215
Portland, Maine 04101
T: (207) 874-4000
msturtevant@lambertcoffin.com

*Counsel for Douglas J. Jorgensen, D.O.*

/s/ Mark G. Lavoie
Mark G. Lavoie, Esq.
Joshua D. Hadiaris, Esq.
NORMAN HANSON & DETROY, LLC
2 Canal Plaza
P.O. Box 4600
Portland, ME 04112-4600
T: (207) 774-7000
F: (207) 775-0806
mlavoie@ nhdlaw.com
jhadiaris@nhdlaw.com

*Counsel for Mark E. Cieniawski, M.D. and Michael B. Bruehl, M.D.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2019, I electronically filed the foregoing document

via e-mail to the U.S. District Court, Portland, Maine, and served same, via e-mail and US mail,

postage prepaid, upon counsel of record addressed as follows:

> James E. Belleau, Esq.
> Adam R. Lee, Esq.
> Trafton, Matzen, Belleau & Frenette, LLP
> PO Box 470, 10 Minot Ave.
> Auburn, ME 04212

DATED at Portland, Maine, this 10th day of January, 2019

/s/ Joshua D. Dunlap
Joshua D. Dunlap
Pierce Atwood LLP
Merrill's Wharf
254 Commercial Street
Portland, ME 04101
(207) 791-1100
jdunlap@pierceatwood.com

*Counsel for AmerisourceBergen Drug Corporation*
